*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0274P (6th Cir.)
File Name: 00a0274p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

ANDRE OLDEN,
  *Petitioner-Appellant,*

  *v.*

No. 98-1085

UNITED STATES OF AMERICA,
  *Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 97-70998—Patrick J. Duggan, District Judge.

Argued: December 10, 1999

Decided and Filed: August 22, 2000

Before: JONES, COLE, and GILMAN, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Vicki L. Carmichael, Jeffersonville, Indiana, for Appellant. David J. Debold, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Vicki L. Carmichael, Jeffersonville, Indiana, for Appellant. David J. Debold, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

---

**OPINION**

---

NATHANIEL R. JONES, Circuit Judge.   Petitioner-Appellant Andre Olden appeals the district court's denial of his § 2255 motion to vacate his conviction for narcotics distribution.   Olden asserts that he was provided ineffective assistance of counsel and completely denied representation by his counsel's absences at critical stages of his trial.  We hold that while Olden cannot  establish prejudice to support his ineffective assistance claim, his counsel's absences at critical stages of his trial completely denied him the representation guaranteed by the Sixth Amendment.  However, because we cannot determine whether Olden legitimately waived his right to his own counsel, we remand for an evidentiary hearing on that issue.  Accordingly, we **VACATE** the district court's denial of Olden's motion to vacate, and **REMAND** for further proceedings consistent with this opinion.

**I.**

Olden was initially indicted on federal conspiracy charges in connection with a drug distribution ring.  The original indictment also charged "Carlos LNU" with conspiracy and heroin distribution on March 21, 1990.  On February 13, 1992, a grand jury returned a superseding indictment, which continued to charge Olden with conspiracy under Count 1, but made no mention of a "Carlos LNU."

At trial, the government presented evidence showing that Olden was a drug "runner," or distributor, for the leaders of the conspiracy, Karl Wingo and Brett Lang.  *See United States v. Lang*, No. 92-2987, 1994 WL 629393, at \*1 (6th Cir. 1994) (unpublished opinion) (affirming Olden's conviction on direct appeal).   Four witnesses described several specific instances of Olden's criminal conduct. Tirrell Harris testified that in early 1989 Olden set up and consummated a drug transaction for a one-eighth kilogram of cocaine for Wingo. Similarly, Michael Zajac testified that in December 1989, in

### III.

While we reject Olden's various ineffective assistance claims pertaining to the "Carlos" allegations and his failure to file various procedural motions, we hold that Olden's counsel was absent at critical stages of the trial, and that if Olden can establish that he did not voluntarily, knowingly, and intelligently waive his right to have his own counsel, he must be granted a new trial. Accordingly, we **VACATE** the denial of Olden's § 2255 motion and **REMAND** for further proceedings consistent with this opinion.

---

nevertheless preserved his right to file a Rule 29 motion. Additionally, we note that the second Rule 29 hearing did not relate to the charges against Olden, and that, with regard to Wittenberg's absence at the *Jencks* hearing, we held on direct appeal that the *Jencks* materials were not discoverable. *See Lang*, 1994 WL 629393 at *5-6. In short, without a critical stage or prejudice showing, Olden's claims here are meritless.

a deal set up by Wingo, he gave Olden $7000 and Olden returned with a quarter kilogram of cocaine. J.A. at 216-220.

On March 21, 1990, undercover DEA Agent Steven Mitchell, accompanied by Agent Michael Brown, arranged to make a heroin purchase from Wingo. Wingo stated that he would send an unnamed person to meet Mitchell and complete the deal. At the scheduled time, a man walked up to Mitchell's vehicle and stated he was "one of Karl's boys." J.A. at 190. Mitchell asked this individual his name, and he answered "Carlos." By the way he said his name, Mitchell immediately suspected it was an alias. In any event, Mitchell rejected the drugs offered by "Carlos," as he suspected the heroin had been "cut," or diluted through commingling with other substances. After subsequent discussions with Wingo regarding the integrity of the drugs, Mitchell agreed to accept the heroin. A second meeting took place in which Mitchell consummated the deal with the "Carlos" he had initially met.

When Olden appeared for his arraignment in November 1991, Mitchell identified Olden as the "Carlos" who sold him heroin on March 21, 1990. *See* J.A. at 194-95. In addition, when Olden went to the DEA office to give handwriting samples, Agent Brown positively identified Olden as the "Carlos" who had consummated the March 21 deal. Based on these identifications, all references to "Carlos LNU" were omitted from a later-filed superseding indictment. The superseding indictment, however, did not specifically charge Olden with heroin distribution on March 21; it simply removed the purported charges against "Carlos LNU" in Counts 1 and 4 of the original indictment.

The grand jury transcript indicated that the conduct formerly ascribed to "Carlos" was being imputed to Olden. Additionally, discovery on the day before the trial supplied Olden's trial counsel, Howard Wittenberg, with Agents Mitchell's and Brown's supplemental report implicating Olden as "Carlos." *Lang*, 1994 WL 629393, at *10. Moreover, Wittenberg admitted that he had read the grand jury testimony of an agent who asserted that Olden was

"Carlos." J.A. at 306. Nevertheless, Wittenberg claimed that it was not until the government referred to Olden as "Carlos" during trial that he learned that Olden was alleged to be the "Carlos" who made the March 21, 1990 deal. Wittenberg asserted that he had been"ambush[ed]" by the "Carlos" allegations, and moved to sever Olden's trial from his co-defendants, asserting that co-conspirator Otis Wingo, Karl Wingo's brother, would provide testimony showing that another individual was the real "Carlos." J.A. at 302. Wittenberg contended that his severance motion would provide his only opportunity to call Otis Wingo since Wingo had decided not to testify. Wittenberg further alleged that by not having notice that Olden would be charged with the conduct attributed to "Carlos," he was unable fully and adequately to defend his client. The district court denied the severance motion, concluding that Wittenberg had appropriately cross-examined the issue, and "dealt with it as well as it could be dealt with if you'd known about it a month before." J.A. at 317.

At trial, in addition to the "Carlos" testimony, the government introduced wiretap testimony in which Karl Wingo discussed efforts by Olden and others to locate various drug paraphernalia before search warrants were executed. Olden responded to the "Carlos" charges by contending that the agents testified "Carlos" was fifty to sixty pounds lighter than Olden. The government, however, countered this assertion with testimony from Zajac, who stated that Olden had gained approximately sixty pounds. Additionally, both Agents Mitchell and Brown positively identified Olden as "Carlos" at trial. *See* J.A. at 194, 209-10. Olden was ultimately convicted of the conspiracy charge and sentenced to 165 months. On direct appeal, Olden asserted that the government constructively amended the indictment by charging him with the conduct attributed to "Carlos" and that the district court erred in denying his severance motion. *See* *Lang*, 1994 WL 629393, at *8. This court summarily rejected Olden's claims. *Id.*

Given the record before us, we cannot determine whether Olden knowingly and intelligently accepted substitute counsel and thereby waived his right to have his own counsel present. The district court did not ascertain whether Olden had any knowledge as to his Sixth Amendment rights, his right to have his own counsel, his right to reject the substitute counsel of his co-defendants, or his right to request a continuance until his own counsel could be present. Nor did the district court engage in the kind of colloquy envisioned by Federal Rule of Criminal Procedure 44(c) when two criminal co-defendants are jointly represented by the same counsel. *See* Fed. R. Crim. P. 44(c). We hold that just as a district court is required to apprise a defendant seeking to represent himself of the nature of his Sixth Amendment rights and the consequences that attend waiver of those rights, *see United States v. Hernandez*, 203 F.3d 614, 625-26 (9th Cir. 2000), a similar colloquy is required when, at any point in a trial, a criminal defendant agrees to accept the substitute counsel of a co-defendant. Such an explanation is contemplated by Rule 44(c), and mandated by the Constitution's requirement that we recognize a Sixth Amendment waiver only when a criminal defendant knowingly, intelligently, and voluntarily agrees to surrender his right to counsel.

Because the current record does not allow us to determine whether Olden knowingly and intelligently waived his Sixth Amendment rights, we remand for an evidentiary hearing on the extent of Olden's awareness of his right to have his own counsel present. If Olden can establish that he did not voluntarily, knowingly, and intelligently waive his right to have his counsel present, Olden must be granted a new trial given our conclusion that Wittenberg's June 5 and 15 absences occurred at critical stages of Olden's trial.[3]

---

[3] Olden also cites Wittenberg's absences at two Rule 29 hearings and a *Jencks* material hearing. Olden, however, does not aver that these absences occurred at critical stages of his trial, and because he has not shown any prejudice from these absences, we cannot conclude that Wittenberg provided ineffective assistance by missing these hearings. We also note that even though Wittenberg missed one Rule 29 hearing, he

We now consider whether Olden waived his Sixth Amendment protections during Wittenberg's absences on June 5 and 15. On June 4, Wittenberg informed the court that because he had to attend a funeral the next day, he would be absent from the courtroom. The exchange between Olden's counsel and the court proceeded as follows:

Mr. Wittenberg: My client has no objections to having Timothy Barkovic [Otis Wingo's counsel] in my absence take notes or whatever. And I would just like to place it on the record at [sic] my client acknowledge that.

The Court: Mr. Olden, is that agreeable with you?

Defendant Olden: Yes.

The Court: All right. Mr. Barkovic, is that agreeable with you?

Mr. Barkovic: Absolutely, your Honor.

The Court: Okay, fine.

J.A. at 252-53. Regarding the second absence, Wittenberg arranged to have co-Defendant Brett Lang's counsel represent Olden while he was absent. Lang's counsel explained Olden's support of his representation as follows:

[Lang's counsel]: Mr. Wittenberg has called and asked that I again stand in for Mr. Olden. I've discussed it with Mr. Olden. [To Olden] You don't have any objection to me standing in place and stead of Mr. Wittenberg today?

Defendant Olden: No.

[Lang's counsel]: Very good. Thank you.

The Court: Okay. Thanks.

J.A. at 270.

Olden subsequently filed a § 2255 petition to vacate, asserting ineffective assistance of counsel and that Wittenberg denied him assistance altogether by his several absences during the trial. Olden emphasized Wittenberg's absences during two particular episodes of the trial when the prosecution introduced evidence allegedly pertaining to Olden's guilt. On June 5, 1992, Agent Michael Brown, among others, attested to the criminal activities of Olden's co-defendants, and witness Joanne Person testified that Olden was present at a heroin purchase she made at a local residence. *See* J.A. at 257. Additionally, on June 15, the government presented wiretap evidence of a conversation between Otis and Karl Wingo, in which Karl asks Otis who is with him, Otis responds that he is with Olden, and the Wingo brothers proceed to have a conversation about illicit activity. *See* Tr. XVIII at 72.

The district court, however, rejected all of Olden's claims, concluding that he had not established deficient representation or prejudice. Regarding Olden's denial of counsel claim, the district court additionally noted that Olden had consented to Wittenberg's absences. *See* J.A. at 163-64. With these rulings, the district court denied Olden's § 2255 motion. Olden now appeals.

## II.

Ineffective assistance of counsel claims present mixed questions of law and fact that we review *de novo*. *See United States v. Jackson*, 181 F.3d 740, 744 (6th Cir. 1999). Any findings of fact pertinent to the ineffective assistance inquiry are reviewed for clear error. *See id.* We apply a two-part test to determine whether a criminal defendant was denied effective assistance of counsel. First, we ascertain whether counsel's performance was professionally deficient; second, we determine whether the deficient performance prejudiced the defendant's constitutional interests. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Rickman v. Bell*, 131 F.3d 1150, 1154 (6th Cir. 1997); *Gravley v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996).

In assessing counsel's performance, we inquire whether "counsel's representation fell below an objective standard of reasonableness," as measured by "prevailing professional norms." *Rickman*, 131 F.3d at 1154 (quoting *Strickland*, 466 U.S. at 687-88). This objective reasonableness standard encompasses strategic litigation choices that simply fail to bear fruit. *See Strickland*, 466 U.S. at 689. To establish prejudice, a defendant must demonstrate a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Rickman*, 131 F.3d at 1155 (quoting *Strickland*, 466 U.S. at 693-94). Prejudice is presumed, however, when a defendant demonstrates actual conflicts of interest that compromise an attorney's ability to advocate his client's interests, *see id.* (citing *Strickland*, 466 U.S. at 692)*,* or when counsel is completely denied due to absence at a critical stage of a trial. *See United States v. Cronic*, 466 U.S. 648, 659 n. 25 (1984).

Olden contends his counsel was constitutionally deficient for failing to obtain material evidence, failing to file various motions, and excessive absence. He additionally asserts that he was denied Sixth Amendment effective assistance by the aggregate effect of these purported errors. We will discuss each allegation in turn.

### A.

Olden first asserts that his trial counsel provided constitutionally deficient representation by failing to learn sooner that the government intended to ascribe the March 21, 1990 criminal conduct of "Carlos" to him. Notwithstanding that the superseding grand jury transcript contained this information, and trial counsel Wittenberg's admission that he discovered an allegation of Olden as "Carlos" in the grand jury testimony, *see* J.A. at 307, Wittenberg stated that he was "ambush[ed]" at trial by the government's allegations that Olden was "Carlos." J.A. at 303. Olden contends that because Wittenberg did not anticipate the "Carlos" allegations, Wittenberg did not pursue, investigate, or develop information that might have exonerated him, including Otis

Here, before we consider whether Olden knowingly and intelligently waived his Sixth Amendment rights, we must first consider whether the absences of Olden's counsel occurred at a sufficiently "critical" stage of the trial to trigger the protections of *Cronic*. Olden's counsel, Wittenberg, was absent on numerous occasions during trial. Specifically, on June 5 and June 15, 1992, Wittenberg was absent when the government presented evidence that pertained to Olden's guilt. On June 5, Agent Brown described the criminal activities of Olden's co-defendants, and witness Joanne Person testified that Olden was present at a heroin purchase she made at a local residence. *See* J.A. at 257. In addition, on June 15, the government presented wiretap evidence obtained by Agent Mitchell. This evidence included a conversation between Otis and Karl Wingo in which Otis represented that Olden was with him, and the Wingo brothers proceeded to converse about drug-related activity. *See* Tr. XVIII at 72. The evidence presented on June 5 and 15, relating to Olden's presence at drug deals and the Wingo brothers' apparent comfort in discussing criminal activity around him, tends to implicate Olden in the drug conspiracy of which he was convicted.

When the government presents evidence probative of a defendant's culpability in criminal activity, or evidence that further implicates a defendant in criminal conduct, that portion of a criminal trial is sufficiently critical to the ultimate question of guilt to trigger the protections of *Cronic*. *See Green,* 809 F.2d at 1263 (holding that "[t]he absence of counsel during the taking of evidence on the defendant's guilt is prejudicial *per se*" and therefore forecloses a harmless error analysis); *cf. Vines v. United States*, 28 F.3d 1123, 1129 (11th Cir. 1994) (finding, in a multi-defendant case, that absence of counsel during taking of non-inculpatory evidence was not prejudicial *per se*). We therefore hold that the trial proceedings of June 5 and June 15 were sufficiently critical stages of Olden's trial that he was constitutionally denied counsel if he did not knowingly and intelligently waive his right to counsel during these proceedings.

1169,1999 WL 426883 at *5 (6th Cir. 1999) (unpublished disposition).[2]

## C.

Third, Olden contends that he did not have any representation during those occasions when his counsel was absent from the courtroom and that he did not knowingly and intelligently accept substitute counsel on those occasions. While Sixth Amendment jurisprudence generally requires a claimant to demonstrate deficient representation and prejudice, we presume prejudice when a defendant demonstrates actual conflicts of interest that compromise an attorney's ability to advocate his client's interests, *see Rickman*, 131 F.3d at 1155 (citing *Strickland*, 466 U.S. at 692), or when counsel is completely denied due to absence at a "critical stage" of a trial. *See Cronic*, 466 U.S. at 659 ("The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial."); *see also Green v. Arn*, 809 F.2d 1257, 1263 (6th Cir.), *vacated and remanded on other grounds*, 484 U.S. 806 (1987), *reinstated on remand*, 839 F.2d 300 (6th Cir. 1988).

Nevertheless, representation, or lack thereof, that would otherwise constitute a constitutional violation may be excused when a defendant knowingly and intelligently waives his Sixth Amendment right to counsel. *See United States v. Nichols*, 979 F.2d 402, 407 (6th Cir. 1992); *see also United States v. Straughter*, 950 F.2d 1223, 1234 (6th Cir. 1991) (holding that knowing and intelligent waiver of Sixth Amendment rights precluded challenge to counsel's purported conflict of interest).

---

[2] Additionally, Olden attempts to raise issues pertaining to the effectiveness of his counsel at sentencing and on appeal; however these issues were not raised below, and therefore are not cognizable on appeal. *See United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990).

Wingo's alleged statement that he could identify the true "Carlos." *See* Olden's Br. at 32-33.

While Wittenberg did present a mistaken identity defense, his ability to effectively defend Olden was seriously hampered by his pre-trial unawareness that the government intended to allege that Olden was "Carlos." As this Court noted on direct appeal, the grand jury transcript and *Jencks* pre-trial disclosure – albeit the day before trial – provided notice of the government's claims on the "Carlos" issue. *See Lang*, 1994 WL 629393, at *10. Moreover, as previously noted, counsel admitted that he reviewed an officer's grand jury statement that the authorities "determined" that "Carlos" was Olden. J.A. at 306-07. Despite this notice, Wittenberg was wholly surprised by the "Carlos" allegations, and admittedly had not developed or investigated the existence of a purported true "Carlos" or probed other possible defenses on this issue. The duty to develop predicate facts underlying a criminal prosecution is paramount. *See, e.g. Coles v. Peyton*, 389 F.2d 224, 226 (4th Cir. 1968) ("Counsel must conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself enough time for reflection and preparation for trial."). By failing to do so, Wittenberg provided Olden with constitutionally deficient representation.

Notwithstanding counsel's provision of ineffective representation, Olden has not established a Sixth Amendment violation on the "Carlos" claim because he cannot establish prejudice. First, it is notable that, outside of the alleged Otis Wingo testimony, Olden has not specifically identified any exculpatory possibilities that were barred by counsel's belated knowledge of the "Carlos" allegations. Further, both Agents Mitchell and Brown positively identified Olden as "Carlos." J.A. 194, 209-10. Moreover, Olden was only charged with the Count 1 conspiracy charge, and was not specifically charged with the March 1990 heroin transaction. In addition to the wiretap evidence, the testimony of Michael Zajac and Tirrell Harris as to specific drug transactions consummated by Olden are sufficient to convict him of the conspiracy charge.

Accordingly, Olden has not established that his counsel's deficient representation so compromised the reliability of his conviction that the result of the proceeding would have been different. *See Rickman*, 131 F.3d at 1155.

**B.**

Olden also contends that his trial counsel was ineffective for failing to file various procedural motions. Specifically, Olden alleges that counsel provided ineffective representation by failing to challenge the indictment, failing to move for a mistrial, and failing to request a special verdict.[1] These claims are without merit.

Olden initially claims that the indictment should have been challenged for variance. Specifically, Olden contends that the jury might have misunderstood the charges it returned against him. This claim fails, however, because the grand jury heard a DEA agent's testimony that Olden was "Carlos," and Olden has not established prejudice from any purported variance. Olden also challenges counsel's representation for failing to move for a mistrial on the government's purported presentation of "extraneous evidence." Olden vaguely, and without any citation to the record, contends that the prosecution's evidence of drug distribution in "other parts of the country and the Phillipines were used" to bolster the conspiracy charge. *See id.* However, this allegation is encompassed within the prior allegations of overbroad admissibility that were dismissed on direct appeal. *See Lang*, 1994 WL 629393 at *5. Moreover, Olden has not advanced any way that his interests were compromised by the admissibility of the evidence he vaguely refers to, and has not even attempted to allege that he was prejudiced.

---

[1] Olden additionally claims that Wittenberg should have requested a "lesser included offense" instruction. Olden, however, does not cite any evidence that supports his claim, nor does he attempt to refute substantial evidence showing that he facilitated the distribution activities of Karl Wingo. Accordingly, Olden's claim is without merit.

Olden additionally contends that his counsel was ineffective for failing to request a special verdict form. Olden asserts that because the conspiracy involved charges of cocaine and heroin distribution, his counsel should have requested a special verdict to determine the respective quantities of heroin and cocaine that supported his conspiracy conviction. However, the statute under which Olden was convicted, 21 U.S.C. § 841(a)(1), provides that it is unlawful to distribute a "controlled substance." Both heroin and cocaine are proscribed "controlled substances" under § 841(a). *See, e.g., United States v. Jones*, No. 95-1608, 1997 WL 441795, at *3 (6th Cir. 1997) (unpublished disposition). Moreover, the district court, not the jury, determines the kind and quantities of "controlled substances" for the purposes of sentencing. *See Edwards v. United States*, 118 S.Ct. 1475, 1477 (1998) ("The Sentencing Guidelines instruct *the judge* in a case like this one to determine both the amount and the kind of 'controlled substances' for which a defendant should be held accountable – and then to impose a sentence that varies depending upon amount and kind."); *United States v. Rey*, 923 F.2d 1217, 1223 (6th Cir. 1991) ("Because the quantity possessed is not an element of the offense under 21 U.S.C. § 841(a), a special interrogatory regarding the amount of cocaine involved is not required by the statute."); *United States v. Moreno*, 899 F.2d 465, 473 (6th Cir. 1990) (asserting that because § 841(b) "sets forth penalty provisions only and not separate 'lesser included' offenses . . . the sentencing judge, not the jury, has the prerogative to make a determination of the quantity of drugs involved in the scheme and sentence accordingly"). Thus, as the district court found, even if there were a significant possibility of variance on Olden's cocaine and heroin distribution charges, the variance is not prejudicial given the broader ambit of § 841(a). Because Olden has not shown that he was entitled to a special verdict, he cannot establish that his counsel was constitutionally deficient in failing to request one. *See United States v. Little*, No. 98-