*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0053p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JARMAINE CARROLL,

　　　　　　*Petitioner-Appellant,*

　　*v.*

No. 05-1319

PAUL RENICO, Warden,

　　　　　　*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 03-73592—Avern Cohn, District Judge.

Argued: December 8, 2006

Decided and Filed: February 2, 2007

Before: CLAY, ROGERS, and SUTTON, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Gerhardt A. Gosnell II, CHESTER, WILLCOX & SAXBE, Columbus, Ohio, for
Appellant. Janet A. VanCleve, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for
Appellee. **ON BRIEF:** Gerhardt A. Gosnell II, Sarah D. Morrison, CHESTER, WILLCOX &
SAXBE, Columbus, Ohio, for Appellant. Janet A. VanCleve, OFFICE OF THE ATTORNEY
GENERAL, Lansing, Michigan, for Appellee.

　　ROGERS, J., delivered the opinion of the court, in which SUTTON, J., joined. CLAY, J.
(pp. 7-10 ), delivered a separate opinion concurring in part and dissenting in part.

———————————

## OPINION

———————————

　　ROGERS, Circuit Judge. We affirm the district court's denial of Jarmaine Carroll's habeas
petition because the Michigan state courts did not unreasonably apply United States Supreme Court
precedent in holding (1) that the state trial court adequately dealt with an incident of improper jury
contact, and (2) that counsel for co-defendant could "stand in" for defendant's counsel during
reinstruction of the jury without violating defendant's Sixth Amendment rights.

　　On November 7, 1997, Elisia Brockington and two masked, armed intruders shot Samir
Dawood in the leg during a robbery of the Eagle Market. Brockington, who admitted to being an
accomplice in the crime, described to the police Carroll's involvement in the robbery. The State of
Michigan subsequently charged Carroll with several crimes, including armed robbery, assault with

1

intent to commit murder, and conspiracy to commit armed robbery. He stood trial with co-defendants William and Michael Thompkins.

On Thursday, May 6, 1999, the jury began deliberating the fate of Carroll and William Thompkins. (Michael Thompkins elected to have the trial judge decide his fate.) Two events pertaining to the jury's deliberations are significant to this appeal. First, on the second day of deliberations, the jury requested that the trial judge reinstruct the jury on certain definitions and elements of the crimes. Carroll's attorney, Richard Powers, who was absent during the start of the reinstructions, entered the courtroom towards the end of the trial court's response to the jury's request. At the end of the reinstruction, which was lengthier than the original instructions and included several examples, counsel for co-defendant, Regina D. Jemison, objected on behalf of co-defendant and Carroll. The trial judge overruled the objection and acknowledged that counsel for co-defendant "stood in" for Carroll's attorney, noting, "She did more than stood in, she stood up."

The second relevant event occurred on Tuesday, May 11, 1999, when the trial court received a note from the jury that family members of one of the defendants harassed two jurors. Juror number 10 stated that, as she was waiting outside for someone to pick her up, a man walked past her and said he was going to "jack her." The man then walked to a car, and looked back at the juror. This prompted her to reenter the building to wait for her ride. Juror number 11, meanwhile, stated that a female asked her for her name. Having heard these two jurors' stories, the trial judge assured the jury that deputies would protect them.

An hour later, the jury convicted Carroll of conspiracy to commit armed robbery, and the trial judge asked the two jurors whether earlier events affected the verdict. Both jurors said that the earlier events did not affect their decisions as to defendants' guilt. Carroll's counsel did not ask for a more detailed investigation or propose a different procedure to investigate the incidents. The judge later sentenced Carroll to fifteen to thirty years. Defense counsel moved for a mistrial because of the contact with the jurors, which the state trial court rejected.

In an unpublished opinion, the Michigan Court of Appeals affirmed Carroll's conviction, *People v. Carroll*, No. 220556, and the Michigan Supreme Court subsequently denied Carroll leave to appeal. 646 N.W.2d 471 (2002). As to Carroll's argument that the trial judge should have granted a mistrial because of jury tampering, the Court of Appeals noted that "the two jurors were not biased against" Carroll. As to Carroll's right-to-counsel argument, the Michigan Court of Appeals noted that co-defendant's counsel, who objected to the conspiracy instructions on behalf of both defendants, "stood in" for Carroll's counsel during the reinstruction.

Carroll filed a petition for habeas relief, which the federal district court denied on October 18, 2004. The federal district court noted that, on the issue of investigating jury tampering, "the preferred course of action would have been to question the jurors individually regarding whether their impartiality was impacted by contact with the unknown persons rather than questioning the jurors together." Nevertheless, the court held that "it cannot be said that the state court's conclusion was contrary to or an unreasonable application of Supreme Court precedent." As to Carroll's denial of the right to counsel, the court noted that, while "it would have been prudent for the trial court to state on the record prior to reinstructing the jury that [counsel for co-defendant] was temporarily representing" Carroll, "the state court's determination that [Carroll] was represented by counsel during reinstruction was not an unreasonable determination of the facts in light of the evidence, nor was it an unreasonable application of Supreme Court precedent."[1]

---

[1] The Michigan Court of Appeals and the federal district court also rejected Carroll's arguments that the trial court violated Carroll's right to a fair trial and due process when the jury saw him wearing handcuffs, and that the prosecutor committed misconduct by vouching for the credibility of a witness. The district court did not appear to rule on Carroll's sentencing argument, which Carroll raised before the Michigan courts and (tangentially) before the federal

The district court properly denied Carroll's petition for habeas relief because the Michigan courts' decisions did not involve an unreasonable application of clearly established Supreme Court precedent or result from an unreasonable determination of facts. A federal court may grant a writ of habeas corpus on behalf of a person in state custody only if the judgment of the state: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2).

## I.     The Michigan Court Did Not Unreasonably Apply Federal Law In Holding That The Trial Court Adequately Investigated Allegations Of Improper Contact With Jurors.

Carroll's argument that the trial court failed to investigate allegations of improper contact with jurors suffers from two serious flaws. First, the record simply does not support Carroll's description of events, namely that the trial court "prohibited counsel for [Carroll] to participate in the investigation" and "ignored the request of [Carroll's] trial counsel to inquire of the jury after they rendered the verdict." Instead, the record demonstrates that the trial court took the lead in investigating the claims and did not prevent Carroll's counsel from asking for a more in-depth investigation.

The relevant section of the record begins after the jury returned a guilty verdict. At that point, the trial court asked counsel, "Do you want a polling?" to which counsel answered, "Can we inquire?" presumably as to any alleged bias resulting from the statements to jurors. In response to counsel's request, the trial court initiated an inquiry, asking both jurors whether the statements had any impact on their deliberations. The two jurors answered in the negative.[2] The judge then asked, "Do you want a polling?" to which counsel answered, "Yes." The trial court then polled the jury.

It is significant that counsel never asked the trial court to conduct any further investigation or to question the jurors individually in closed chambers. *See White v. Smith*, 984 F.2d 163, 166 (6th Cir. 1993) (observing that counsel did not request a hearing for the purpose of assessing the impact of statements that the jury heard); *United States v. Walker*, 160 F.3d 1078, 1084 (6th Cir. 1998) (same for impact of juror riding in elevator with co-defendant). Carroll is simply incorrect in stating that the trial court *prohibited* anyone from participating in the investigation or ignored anyone's requests because counsel did not make any requests.

Second, Carroll's argument falters because precedent from the United States Supreme Court does not require more than what the trial court did in this circumstance. The two principal cases upon which Carroll relies, *Remmer v. United States*, 347 U.S. 227 (1954), and *Smith v. Phillips*, 455 U.S. 209 (1981), do not support his argument that the trial court failed in its obligations.

In *Remmer,* an unknown person tried to induce the jury to find the defendant not guilty by attempting to bribe a juror. 347 U.S. at 228. After the juror informed the court of the bribe offer, the FBI interviewed jurors. Neither the judge nor the prosecutor, however, informed the defendant

---

district court. Carroll does not raise the sentencing issue on appeal. On February 7, 2005, the federal district court denied Carroll's Motion for Reconsideration and his Request for a Certificate of Appealability. On October 25, 2005, this court granted Carroll a certificate of appealability as to the two issues that he raises on appeal.

[2] It is not unusual for judges to take an active role in investigating. *See, e.g.*, *United States v. Sturman*, 951 F.2d 1466, 1478 (6th Cir. 1991) (judge asked whether an incident would affect jurors' ability to remain fair and impartial); *United States v. Pennell*, 737 F.2d 521, 529 (6th Cir. 1984) (describing a thorough investigation by the trial court). As to Carroll's suggestion that it was improper to ask jurors questions in open court, appeals courts afford trial courts discretion to determine the scope of proceedings necessary to determine juror bias. *See United States v. Griffith*, 17 F.3d 865, 881 (6th Cir. 1994).

of the incident. *Id.* On appeal following a conviction, the United States Supreme Court ordered the district court to conduct a hearing to determine whether the incident harmed the defendant, and, if so, to hold a new trial. *Id.* at 230; *see also United States v. Herndon*, 156 F.3d 629, 637 (6th Cir. 1998) (holding that to fulfill its *Remmer* obligations, a trial court must investigate claims of juror misconduct and not just permit defense counsel to make a record for the purposes of appeal). This case stands in stark contrast with *Remmer* since the state trial court did, in fact, engage in an investigation of allegations of bias during which the jurors said that they could serve in a fair and impartial manner. *See Zuern v. Tate*, 336 F.3d 478, 486 (6th Cir. 2003).

*Smith*, similarly, does not support Carroll's position. In *Smith*, a juror in a state murder trial applied for a "major felony investigator" position at the district attorney's office. 455 U.S. at 212. After the jury convicted the defendant, the state trial court held a hearing during which the juror "explained that he had seen nothing improper in submitting the application during the trial." *Id.* at 212-13. After hearing this evidence, the state trial court held that there was no prejudice against the defendant on the part of the juror, 455 U.S. at 213, and the United States Supreme Court refused to disturb the state court's finding. *Id.* at 218. As in *Smith*, the trial judge in this case investigated allegations of bias, and, as in *Smith*, Carroll offers no justifications (beyond calling the state proceedings "superficial and wholly inadequate") for overturning the findings of the state courts. *Id.*[3]

Thus, while the trial court might have done more to investigate the claims of jury tampering, there is nothing in *Remmer* or *Smith* that required the trial court to do so. For this reason, Carroll's claim is without merit because the state courts did not engage in an unreasonable application of federal law.

**II.     Michigan Courts Reasonably Determined That The Trial Court Did Not Deny Carroll The Right To Counsel By Allowing Counsel For Co-Defendant To "Stand In" For Carroll's Counsel.**

The state courts, similarly, did not engage in an unreasonable application of clearly established federal law, as determined by the United States Supreme Court, when they rejected Carrrol's argument that he was denied counsel during jury reinstruction. Clearly, Carroll had a right to counsel when the trial court reinstructed the jury. *See Strickland v. Washington,* 466 U.S. 668, 686 (1984) (right to counsel); *United States v. Cronic*, 466 U.S. 648, 659 (1984) (right to counsel at critical stage of trial); *French v. Jones*, 332 F.3d 430, 436 (6th Cir. 2003) (critical stage includes giving of supplemental jury instructions). The only question that remains is whether the Michigan state courts unreasonably applied United States Supreme Court precedent when they determined that Carroll was, in fact, represented by counsel when counsel for co-defendant "stood in" for a portion

---

[3] Carroll refers to a series of Sixth Circuit decisions to suggest that state courts must engage in a more extensive *Remmer* review. Our inquiry here, however, focuses on United States Supreme Court precedent and none of these Sixth Circuit cases that Carroll refers to suggest that the Michigan courts' interpretation of United States Supreme Court precedent was unreasonable. Thus, while this Circuit in direct appeals may require more stringent procedures, United States Supreme Court precedent guides our review of state habeas petitions.

of the jury reinstructions.[4]  Because the Michigan courts did not unreasonably apply Supreme Court precedent, we affirm the district court's denial of habeas relief.

The Michigan Court of Appeals distinguished the facts before it from a case in which counsel for co-defendant did not "stand in" during the jury reinstructions.  The court noted that

> the record reveals that defendant was not denied his right to counsel during the reinstruction.  Defense counsel thanked codefendant William Thompkin's attorney for standing in for him during the reinstruction, and Thompkin's attorney objected to the conspiracy instruction on behalf of both defendant and Thompkins.  In addition, the trial court acknowledged that Thompkin's attorney "stood in" for defense counsel during the reinstruction.  Therefore, because defendant was represented by counsel during the reinstruction, he was not deprived of his Sixth Amendment right to counsel.

The Michigan court's solution to the problem of having counsel for co-defendant "stand in" for counsel is not the ideal solution, nor consistent with this court's precedent regarding what federal courts must do.  *See Olden v. United States*, 224 F.3d 561, 568-69 (6th Cir. 2000).  The preferred solution to such problems is to generate *ex ante* approval by having the trial court ask the defendant whose counsel is not present whether he or she consents to having counsel for co-defendant stand in, and insuring that the consent is informed.  *See United States v. Patterson*, 215 F.3d 776, 784-85 (7th Cir. 2000).

The Supreme Court, however, has not required this court's solution in *Olden.*  The cases upon which Carroll relies, *Johnson v. Zerbst*, 304 U.S. 458 (1938), *Brewer v. Williams*, 430 U.S. 387 (1977), and *United States v. Cronic*, 466 U.S. 648 (1984), did not reach the issue of co-defendant's counsel "standing in" during a critical phase of the trial, a common practice in extended multi-defendant trials.  *See United States v. Jackson*, 207 F.3d 910, 918-19 (7th Cir. 2000); *Patterson*, 215 F.3d at 783-86.  In *Johnson*, for example, the Supreme Court dealt with a situation in which defendants were tried, convicted, and sentenced without assistance of counsel.   304 U.S. at 460.  The Court held, "[i]f the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or liberty." *Id.* at 468.  The Court, however, did not discuss whether a "stand in" counsel constituted counsel for the purposes of this test.  In *Brewer*, the Court determined whether a defendant waived the right to counsel when the police intentionally interrogated the defendant after adversary proceedings had commenced, and the Court did not reach the issue of whether a co-counsel briefly "standing in" deprived a defendant of his rights.  430 U.S. at 404-05.  The issue instead was whether defendant waived his right under *Massiah v. United States*, 377 U.S. 201 (1964), not to be interrogated without a lawyer present, when defendant responded to a "Christian burial" ploy by investigating police.  Finally, in *Cronic*, the Supreme Court held that there was no constitutional violation when an inexperienced attorney represented a defendant, but noted that the court has "uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceedings." 466 U.S. at 659 n.25.  The Supreme Court did

---

[4] The parties dispute the appropriate standard of review.  The state argues that state trial courts made a factual determination that counsel did, in fact, represent Carroll, and that deference to this factual finding is appropriate. Carroll, on the other hand, argues that deference is not appropriate because the state courts made a legal determination that the facts, as they existed in the record, do not show a violation of Carroll's constitutional right to counsel.  "The question of whether the trial judge deprived [a defendant in a state criminal trial] of his right to counsel during the supplemental jury instruction is a mixed question of law and fact." *French v. Jones*, 332 F.3d 430, 435 (6th Cir. 2003).  The court defers to any factual findings that the state courts made (*e.g.*, that counsel arrived at the end of the proceedings) but overturns state courts' legal conclusions (*e.g.*, that the trial court did not deprive defendant of the right to counsel) only if the state courts unreasonably applied United States Supreme Court precedent.

not address whether "stand in" counsel solves the problem of an absent counsel. Because no United States Supreme Court precedent deals with the issue of "stand in" counsel, the Michigan Courts did not engage in an unreasonable application of Supreme Court precedent when they determined that Carroll was not denied assistance of counsel at the jury reinstruction phase.

For these reasons, we affirm the district court's denial of Carroll's habeas petition.

---

**CONCURRING IN PART, DISSENTING IN PART**

---

CLAY, Circuit Judge, concurring in part and dissenting in part. While I concur in Part I of the majority's opinion, which concludes that Petitioner suffered no constitutional violation of his right to an impartial jury, I dissent from the majority's evident error in Part II of the majority opinion in approving the continuation of the trial proceedings in the absence of Petitioner's counsel.

Contrary to clear Supreme Court precedent and with absolutely nothing in the record justifying such a holding, the majority by its ruling in this case makes a mockery of perhaps the most fundamental of all rights of the accused. Petitioner's Sixth Amendment right to counsel was clearly violated by his counsel's unexplained absence during the jury reinstruction. There is absolutely no indication anywhere on the record that Petitioner was aware that his counsel would be absent from the trial or that Petitioner consented to the co-defendant's counsel "standing in" for his own counsel; therefore, it defies logic to conclude that Petitioner knowingly or intelligently waived his right to be represented by his counsel. Where a record is completely silent as to the circumstances of one defense counsel "standing in" as counsel for another defendant, there is also no indication on the record regarding whether the two defendants have competing or conflicting interests, claims, or defenses; this is a problem which is simply not addressed by the majority opinion.

In the present case, the jury requested to be reinstructed on the elements of conspiracy, one of the crimes with which Petitioner had been charged. With no on-the-record acknowledgment that Petitioner's counsel was not present, the court began the reinstruction. In explaining the crime of conspiracy, the court gave an example of how conspiracy worked and, in the process, incorporated the prosecution's theory of the case into its example. Petitioner's counsel was not present to witness or object to the content or method of the instruction. The counsel for the co-defendant stood up and objected on behalf of her own client, and then, purportedly, on behalf of Petitioner. The objection was overruled. Petitioner's actual counsel then entered the courtroom and for the very first time anywhere on the record, there is an acknowledgment that he had been absent.

Petitioner's counsel apologized to the court for his absence and thanked the co-defendant's counsel for "standing in." Petitioner, however, was not addressed at all by his counsel or by the court concerning Petitioner's knowledge of his counsel's absence or his consent to proceed in the absence of his counsel. There is a deafening silence on the record as to whether Petitioner was ever informed of his Sixth Amendment right to counsel, his counsel's anticipated absence from the proceedings, or that he would be represented by another defendant's counsel. However, with virtually no information available to it in order to assess whether Petitioner's rights were violated, the majority blithely proceeds to hold that Petitioner's Sixth Amendment right to counsel was not abridged.

**I.**

The majority opinion inappropriately narrows the issue in this case to whether the Supreme Court has ever expressly held that the interjection of another defendant's counsel as replacement counsel–even if not consented to–amounts to a violation of Petitioner's Sixth Amendment rights. The majority claims that none of the cases Petitioner cites benefit him because none of them address the issue of replacement counsel, which the majority insists on innocuously referring to as "stand-in" counsel. To underline this point, the majority spends significant energy distinguishing the cases cited by Petitioner on factual grounds. However, a Supreme Court case need not be precisely factually identical to the instant case in order to be instructive with respect to the legal principles at issue. *Harris v. Stovall*, 212 F.3d 940, 945 (6th Cir. 2000). The cases Petitioner cites are relevant

because they stand for the very propositions of law that are at stake in this case. While the Court has never expressly addressed the issue of replacement counsel, where there is no indication on the record that the defendant has consented to the replacement, it has been established that, as a threshold matter, counsel's absence during a critical stage of a trial constitutes reversible error. *United States v. Cronic*, 466 U.S. 648, 659 (1984). Further, the Court has explicitly stated that "[i]t is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice." *Powell v. Alabama*, 287 U.S. 45, 53 (1932). *See also United States v. Gonzalez-Lopez*, 126 S. Ct. 2557, 2561 (2006); *Wheat v. United States*, 486 U.S. 153, 159 (1988). Finally, the Court has held that for any abridgment of this right to be permissible, a defendant must "intelligently" and "knowingly" waive the right to counsel, and the burden falls wholly to the government to "prove an intentional relinquishment or abandonment" of the right. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), *overruled in part on other grounds by Edwards v. Arizona*, 451 U.S. 477 (1981). Taken together, these cases provide the very framework of Petitioner's legal argument, which is that because Petitioner had a right to counsel at the jury reinstruction phase of his trial, the Sixth Amendment clearly required an on-the-record showing that Petitioner was aware of and knowingly consented to any substitution of his counsel. Where such a showing is absent, as it was in the instant case, this Court cannot, consistent with Supreme Court precedent, relieve the government of its burden of proving waiver of this clearly established right.

Thus, while there is no Supreme Court case which expressly provides that a court may not substitute a defendant's counsel without the defendant's consent and even the defendant's knowledge, the logical extension of the Supreme Court's past holdings clearly indicate that this practice implicates a defendant's Sixth Amendment rights and require an intelligent and knowing waiver of those rights. *Powell*, 287 U.S. at 53; *Johnson*, 304 U.S. at 464. The Supreme Court has made it abundantly clear that "a state-court decision . . . involves an unreasonable application of this Court's precedent if the state court . . . unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The majority's dismissal of instructive Supreme Court cases on the grounds of inconsequential factual distinctions is improper, and its focus on a supposed lack of precedent on the precise issue of replacing a defendant's counsel without the defendant's knowledge or consent is entirely misplaced.

## II.

While the Supreme Court has thus far not issued a ruling on the exact issue before this Court, we have been confronted with this issue and have come to a conclusion contrary to the one put forth by the panel majority. In fact, the majority opinion admits that the state court's holding was neither the "ideal solution, nor consistent with this court's precedent of what federal courts must do." Thus, it is undisputed that this Court considers the practice of having a co-defendant's counsel take over for an absent attorney, at least in the federal system, to require an on-the-record showing that the defendant "knowingly and intelligently waive[] his [or her] Sixth Amendment right to counsel," in order to be constitutionally permissible. *Olden v. United States*, 224 F.3d 561, 568, 569 (6th Cir. 2000). In *Olden*, this Court was confronted with a case where the defendant's counsel, Mr. Wittenberg, anticipated two absences from trial. *Id.* at 568-69. Mr. Wittenberg notified the court and the exchange proceeded as follows:

| | |
|---|---|
| Mr. Wittenberg: | My client has no objections to having Timothy Barkovic [co-defendant's counsel] in my absence take notes or whatever. And I would just like to place it on the record at [sic] my client acknowledge that. |
| The Court: | Mr. Olden, is that agreeable with you? |
| Defendant Olden: | Yes. |
| The Court: | All right. Mr. Barkovic, is that agreeable with you? |
| Mr. Barkovic: | Absolutely, your Honor. |

The Court:               Okay, fine.

*Id*. at 569.  For the second absence, the following exchange occurred:

Mr. Barkovic:          Mr. Wittenberg has called and asked that I again stand in for Mr. Olden. I've discussed it with Mr. Olden. [To Olden] You don't have any objection to me standing in place and stead of Mr. Wittenberg today?
Defendant Olden:    No.
Mr. Barkovic:          Very good. Thank you.
The Court:               Okay.  Thanks.

*Id*.

        In that case, we noted that in *Cronic*, the Supreme Court held that a counsel's absence from a critical stage of trial was *per se* prejudice, which could be overcome only by a showing that the defendant "knowingly and intelligently accepted substitute counsel and thereby waived his right to have his own counsel present." *Id*. We held that it was not clear, however, "whether Olden had any knowledge as to his Sixth Amendment rights, his right to have his own counsel, his right to reject the substitute counsel of his co-defendants, or his right to request a continuance until his own counsel could be present." *Id*. Thus, *Olden* stands for the proposition that the constitutional guarantee the Supreme Court envisioned in *Cronic* may not be waived absent an extensive colloquy that makes clear to this Court that the defendant accepted substitute counsel and was aware of all other options available when he or she did so. *See id.* Thus, our holding in *Olden* is entirely relevant to the present case and we are bound by our own previous interpretation of Supreme Court precedent.

        In the instant case, not only did the state court not engage in a colloquy that would come even close to the standard set by *Olden*, but the record is wholly silent with respect to whether Petitioner was even aware that his counsel would be absent and that he would be represented by a co-defendant's counsel.  In fact, during oral argument, when confronted with the fact that there is no proof on the record that Petitioner was ever informed of his counsel's absence, counsel for the government made the unfathomable argument that this Court should assume consent to substitute counsel where the record is silent about the matter.  The majority's conclusion seems to implicitly adopt this reasoning, which renders the Supreme Court holding in *Cronic* meaningless.  According to the Supreme Court, counsel's absence during a critical stage of the trial is *per se* prejudicial, which can be overcome only by the government bearing the burden of demonstrating that the right was waived. *Cronic*, 466 U.S. at 659.  However, the majority opinion effectively shifts the burden to Petitioner to prove that such an absence was not consented to.  Thus, the majority opinion creates a presumption that counsel's absence from a critical stage of a trial was consented to unless there appears proof on the record to the contrary.  It matters not to the majority that the record is silent and offers no guidance whatsoever.  Such a presumption is wholly at odds with clear Supreme Court precedent. *Id*.

        While the majority opinion acknowledges that *Olden* compels a different result, it inexplicably holds that such an inconsistency does not amount to an unreasonable application of Supreme Court precedent.  According to the majority opinion, because the Supreme Court has not explicitly addressed the issue of whether substitute or replacement counsel solves the problem of proceeding with a trial in a defendant's counsel's absence, doing so cannot constitute an unreasonable application of Supreme Court precedent.  The majority seemingly maintains this position notwithstanding the potential problems arising from the fact that a co-defendant's counsel may represent a person whose defense or trial strategy may conflict with that of the defendant whose counsel has absented himself from the trial proceedings.

The majority's understanding of AEDPA is not in keeping with our past analyses of the statute. Again, Petitioner need not be able to point to a Supreme Court case directly on point in order to be successful on a habeas petition under AEDPA. Where we have previously interpreted Supreme Court case law and held that a certain right or principle has been clearly established, the law of this Circuit should be considered. Specifically, we have held that

> [a]lthough only Supreme Court case law is relevant under the AEDPA in examining what Federal law is 'clearly established,' the decisions of the United States Courts of Appeals may be informative to the extent we have already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court.

*Hill v. Hofbauer*, 337 F.3d 706, 716 (6th Cir. 2003). It is irrelevant to this reasoning that *Olden* does not arise under AEDPA because this Court need not limit itself to AEDPA cases to determine whether a legal principle is "clearly established" federal law. *See e.g., Mason v. Mitchell*, 320 F.3d 604, 634 (6th Cir. 2003) (applying a pre-AEDPA case in a post-AEDPA setting and concluding that the pre-AEDPA case is nonetheless instructive). Particularly, because *Olden* involved an interpretation of the Supreme Court holding in *Cronic*, its applicability is not limited to the direct appeal context and remains instructive to the extent that it elucidates legal principles that have been clearly established by the Supreme Court. In other words, where we have previously interpreted Supreme Court case law to encompass a legal principle or right, the law of this Circuit is relevant for habeas review under AEDPA. *Id*.

The Sixth Amendment cannot survive where this Court inexplicably interprets a record completely devoid of any proof of an intelligent and knowing waiver of the right to counsel to constitute proof that such a waiver must have occurred. Therefore, I respectfully dissent from Part II of the majority opinion.