NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0414n.06

**No. 12-1222**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| CONNY MORITZ, | ) | |
|  | ) | **FILED** |
| Petitioner-Appellee, | ) | *Apr 25, 2013* |
|  | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | On Appeal from the United States |
|  | ) | District Court for the Eastern |
| BLAINE LAFLER, Warden, | ) | District of Michigan |
|  | ) | |
| Respondent-Appellant. | ) | |

Before:        BOGGS and McKEAGUE, Circuit Judges; and CARR, District Judge.[*]

BOGGS, Circuit Judge.   In 2003, petitioner-appellee Conny Moritz was tried for and convicted in the Macomb County Circuit Court of various crimes relating to the kidnapping of his estranged wife and her son.

After losing his direct appeal, in which he argued only that his Sixth Amendment right to confront the witnesses against him was violated, Moritz instituted state-court post-conviction proceedings in the Macomb County Circuit Court, arguing, *inter alia*, that during his original trial: (1) the trial court "violated his Sixth Amendment right to counsel of choice when it replaced defense counsel without obtaining defendant's consent or waiver"; and (2) "he was denied his Sixth and Fourteenth Amendment rights to counsel where his retained counsel was absent at a critical stage."

---

[*] The Honorable James G. Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

No. 12-1222
Moritz v. Lafler

In addition, Moritz argued that he was denied "his Sixth and Fourteenth Amendment rights to effective assistance of counsel where all three of his appellate counsels failed to raise the above issues" and that he thus had "established good cause for his failure to previously raise these grounds for relief." The state court denied his claims.

Moritz then sought a writ of habeas corpus in the United States District Court for the Eastern District of Michigan raising, *inter alia*, the same two claims—denial of the right to counsel of choice and denial of the right to counsel generally. The district judge held that though these two claims were procedurally defaulted, Moritz had established cause and prejudice by showing ineffective assistance of appellate counsel. The district judge also found that the state post-conviction trial court had not reached the merits and thus reviewed Moritz's claims *de novo* rather than under the deferential standard of review prescribed by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d) (AEDPA). After conducting such a review, the district judge held that a stand-in lawyer, rather than Moritz's chosen counsel, was present during the reading of a supplemental instruction to the deadlocked jury, that Moritz had not waived his right to have retained counsel present, and thus that this substitution of counsel was structural error requiring automatic reversal of Moritz's conviction. Accordingly, the district judge conditionally granted Moritz's petition. The State now appeals. For the reasons that follow, we reverse the decision below and remand Moritz's petition to the district court for consideration of the other grounds of relief raised therein.

**I**

**A**

- 2 -

Moritz's underlying conviction arose from a series of events beginning in November 2002, when Moritz's wife, Donna, left their home in Tennessee and moved to Michigan. With her, Donna also took her eight-year-old son, Salvatore, who was not related to Moritz. In December 2002, Moritz traveled to Michigan along with his own two children, Tina and Kevin, to bring Donna back to Tennessee. After arriving at the apartment where Donna was staying, Moritz allegedly threatened Donna, Salvatore, and Donna's neighbors with a gun and forced Donna and Salvatore into his car. Once in the car, a struggle ensued during which Moritz fired the gun, injuring Donna, Salvatore, and Tina. At the end of this scuffle, Moritz fell out of the car, at which point the remaining passengers drove to a nearby hospital for treatment. Though Salvatore and Donna were seriously injured, no one was fatally wounded during this incident.

In July 2003, Moritz was tried in the Macomb County Circuit Court for crimes relating to this series of events. At trial, he was represented by Ricky J. Nelson. After the jury deliberated for approximately fifteen hours, it informed the judge that it could not reach a unanimous verdict. The judge, however, felt that it was too early to declare a mistrial and spoke with the parties about reading the jury a supplemental deadlock instruction. During this interlude, Nelson had been detained, and thus another attorney, Cecil St. Pierre, stood in to represent Moritz. The transcript of this proceeding indicates neither why Nelson was absent nor how St. Pierre was chosen, and nowhere in the transcript did Moritz consent to this substitution of counsel.

St. Pierre objected to the proposed deadlock instruction and moved for a mistrial. The judge denied St. Pierre's motion, noting that even if a mistrial were declared, the case would likely be retried, and then read the supplemental instruction to the jury. After the instruction was read, St.

Pierre told the judge that if the jury deadlocked again, Nelson should be present to represent Moritz, as he knew the circumstances of this case and would be in a better position to protect Moritz's interests.

Subsequently, the jury convicted Moritz of one count of kidnapping, in violation of Mich. Comp. Laws § 750.349, one count of first-degree home invasion, in violation of Mich. Comp. Laws § 750.110a(2), three counts of felony firearm, in violation of Mich. Comp. Laws § 750.227b, four counts of assault with a dangerous weapon, in violation of Mich. Comp. Laws § 750.82, and one count of carrying a dangerous weapon with unlawful intent, in violation of Mich. Comp. Laws §750.226.

**B**

Moritz, represented by Susan Meinberg, appealed his 2003 conviction to the Michigan Court of Appeals, arguing only that his Sixth Amendment right to confront the witnesses against him at trial had been violated. While his appeal was pending, Moritz filed a motion for resentencing in the Macomb County Circuit Court. In 2004, that court granted Moritz's motion and resentenced him on his kidnapping and first-degree home-invasion convictions, leaving the sentences for his other convictions unaltered. Moritz appealed his 2004 resentencing to the Michigan Court of Appeals through a second appellate counsel, Frederick Neumark. The Michigan Court of Appeals, after consolidating Moritz's appeal of his 2004 resentencing with the earlier appeal of his 2003 conviction, affirmed Moritz's conviction but remanded to the trial court for another resentencing. Moritz applied to the Michigan Supreme Court for leave to appeal his 2003 conviction, again raising

only a Sixth Amendment right-to-confrontation claim. The Michigan Supreme Court, not persuaded that the questions presented should be reviewed, denied the application.

In 2006, the trial court again resentenced Moritz on his kidnapping and first-degree home-invasion convictions. Moritz appealed this resentencing as well, this time through appellate counsel Wendy Barnwell. The Michigan Court of Appeals affirmed Moritz's 2006 resentencing, and the Michigan Supreme Court denied his application for leave to appeal, again unpersuaded that the questions presented warranted its review.

## C

Moritz next pursued state-court post-conviction relief in the Macomb County Circuit Court, raising seven grounds for relief. Among these were claims, raised for the first time, that during Moritz's original trial: (1) the trial court "violated his Sixth Amendment right to counsel of choice when it replaced defense counsel without obtaining defendant's consent or waiver"; and (2) "he was denied his Sixth and Fourteenth Amendment rights to counsel where his retained counsel was absent at a critical stage."[1] Essentially, Moritz's first ground for relief was a *choice*-of-counsel claim, while the second was a *denial*-of-counsel claim. In addition, Moritz argued that he was denied "his Sixth and Fourteenth Amendment rights to effective assistance of counsel where all three of his appellate

---

[1] The federal district court opinion, which granted Moritz's petition for a writ of habeas corpus and which is the subject of our current review, addressed only the state court's analysis of these two claims and ultimately granted Moritz's petition based *only* on these two claims. Accordingly, we also address only these two claims, noting in the end that remand will be necessary to allow the federal district court to address Moritz's remaining grounds for habeas relief.

counsels failed to raise the above issues" and that he thus had "established good cause for his failure to previously raise these grounds for relief."[2]

The Macomb County Circuit Court denied Moritz's claims on July 2, 2008. Moritz appealed this decision to the Michigan Court of Appeals, which denied him leave to appeal for failure to establish "entitlement to relief under MCR 6.508(D)." The Michigan Supreme Court also denied him leave appeal for the same reason.

**D**

Moritz filed his original habeas petition in the United States District Court for the Eastern District of Michigan in December 2007. At Moritz's request, the district court held the petition in abeyance while Moritz appealed his 2006 resentencing and exhausted his state remedies. In December 2009, the district court reinstated Moritz's habeas case and allowed Moritz to file an amended petition, which advanced, *inter alia*, the same two grounds for relief raised in state court—denial of the right to counsel of choice and denial of the right to counsel generally.

The district court began by noting that the standard for reviewing the state court's decision—either *de novo* or the deferential standard prescribed by AEDPA § 2254(d)—turned on whether the state court denied Moritz's claims based on an adequate and independent state procedural ground or on their merits. The district court also recounted this circuit's ruling in *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc), that "[b]ecause the form orders [of the Michigan Court of Appeals and Michigan Supreme Court] citing Rule 6.508(D) are

---

[2] While this argument was presented as one of Moritz's seven independent grounds for relief, it is actually a sub-argument explaining why Moritz failed to raise his other claims earlier.

ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained," and district courts "must 'therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection' of petitioner's claims." (quoting *Guilmette*, 624 F.3d at 291). Examining the last reasoned state-court opinion, in this case the opinion of the Macomb County Circuit Court, the district court held that the state court had not reached the merits of Moritz's choice-of-counsel and denial-of-counsel claims, but rather had dispensed with them solely on the ground of procedural default. It thus reviewed Moritz's claims *de novo* rather than under the deferential standard of review prescribed by AEDPA § 2254(d).

Before conducting a *de novo* review of Moritz's claims, however, the district court noted that because the state trial court denied post-conviction relief based on procedural grounds, Moritz's claims were procedurally defaulted, barring federal habeas review absent a showing of cause for the default and actual prejudice as a result of the allege constitutional violation. The court further held, however, that Moritz had established cause and actual prejudice by showing that ineffective assistance of appellate counsel was the reason he had not earlier raised his choice-of-counsel and denial-of-counsel claims. Finding that Moritz's "claims involving the denial of the right to be represented by counsel of his choice during a critical stage of the proceedings in the absence of a valid waiver [we]re meritorious," the district court believed that Moritz's "three different appellate counsel were ineffective for failing to raise these claims on petitioner's direct appeals." The district court thus ruled that Moritz had overcome the procedural-default bar and that it could review the merits of his claims *de novo*.

After conducting such a review, the district judge held that a stand-in lawyer, rather than Moritz's chosen counsel, was present during the reading of a supplemental instruction to the deadlocked jury (a critical stage of a judicial proceeding), that Moritz had not waived his right to have retained counsel present, and thus that Moritz had shown denial of choice of counsel. In addition, the district court held that the "[s]tand-in counsel's lack of knowledge about the case and the obvious lack of adequate preparation time amounted to a constructive denial of counsel for petitioner" and thus that Moritz had also shown denial of counsel generally. Because these constituted structural errors, the district court held that they required automatic reversal of Moritz's conviction and conditionally granted his petition. The district court closed by stating that because Moritz's "claim involving the denial of counsel is dispositive of the petition, the Court considers it unnecessary to review petitioner's other claims and declines to do so."

**II**

**A**

This case turns on whether the federal district court applied the proper standard of review as required by AEDPA § 2254(d). As this circuit has made clear, a federal district court "may only grant habeas relief [if it finds] that the [state] trial court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'was based on an unreasonable determination of the facts in light of the evidence that was presented in the State court proceeding.'" *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012) (quoting 28 U.S.C. § 2254(d)). In addition, "[t]he law in question must have been clearly

established at the time the state-court decision became final, not after." *Ibid*. (citing *Williams v. Taylor*, 529 U.S. 362, 380 (2000)).

The Supreme Court has recently emphasized, and this court has reiterated, that the level of review permitted by AEDPA is narrower than even the plain language of that statute might suggest. *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 786 (2011); *Peak*, 673 F.3d at 472. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (internal quotation marks omitted). Thus, "if it is possible for a fairminded jurist to believe that the state court's rationale comports with [clearly established federal law, as determined by the Supreme Court,] we must deny relief." *Peak*, 673 F.3d at 472.

The deferential AEDPA standard of review only applies, however, to claims that were "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). Thus, if a state court "did not reach the merits of [a habeas] claim, federal habeas review is not subject to the deferential standard that applies under AEDPA . . . . Instead, the claim is reviewed *de novo*." *Cone v. Bell*, 556 U.S. 449, 472 (2009).

The Supreme Court has made exceedingly clear, however, that a state-court decision espousing to resolve a claim on the merits receives the deferential treatment required under AEDPA even when "unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington*, 131 S. Ct. at 784. "There is no text in [AEDPA] requiring a statement of reasons," so a state court claiming to have made a decision on the merits will be credited as doing so even when it provides no explanation or does "not cite or even [seem] aware of [governing Supreme Court]

cases." *Ibid*. In fact, even when a state court does not expressly indicate whether its decision is on

the merits, "it may be presumed that the state court adjudicated the claim on the merits in the absence

of any indication or state-law procedural principles to the contrary." *Id*. at 784–85. In other words,

there is a strong presumption that state-court decisions are based on the merits, even when a state

court does not say so and especially when a state court explicitly does say so.

**B**

Before examining the state-court decision in the instant case, this court must locate the proper

state-court opinion to review. While both the Michigan Supreme Court and the Michigan Court of

Appeals issued rulings on Moritz's case, both courts did so summarily, stating only that they were

denying leave to appeal for failure to establish "entitlement to relief under MCR 6.508(D)."

Traditionally, federal courts in this circuit had construed a Michigan appellate court's reliance

on M.C.R. 6.508(D) as an express procedural ruling, one that would not satisfy the merits-

adjudication prerequisite needed to trigger deferential AEDPA review. *See, e.g.*, *Munson v. Kapture*,

384 F.3d 310, 314–15 (6th Cir. 2004). There were some decisions, however, indicating that M.C.R.

6.508(D)'s language referencing the defendant's "burden of establishing entitlement to the relief

requested" had a substantive component as well and thus that a Michigan appellate court's

invocation of that rule could also qualify as a decision on the merits. *See, e.g.*, *Abela v. Martin*, 380

F.3d 915, 922–23 (6th Cir. 2004).

This circuit's decision in *Guilmette* resolved the issue, holding that "[b]rief orders citing

Michigan Court Rule 6.508(D) are not explained orders invoking a procedural bar." *Guilmette*, 624

- 10 -

F.3d at 289. Instead, the en banc court in that case observed that "holdings from the Michigan courts indicate that the language used by such summary orders can refer to the petitioner's failure to establish entitlement to relief either on the merits or procedurally." *Id*. at 289–90 (emphasis added). The *Guilmette* court thus found that when a Michigan appellate court denies review of a claim using a summary order citing M.C.R. 6.508(D), a federal court conducting habeas review must "look to the last reasoned state court opinion to determine the basis for the state court's rejection of [the] claim." *Id*. at 291.[3]

Applying *Guilmette* to Moritz's case, we look through the decisions of the Michigan Supreme Court and Michigan Court of Appeals, both of which relied on M.C.R. 6.508(D), to the decision of state trial court, *i.e.*, the Macomb County Circuit Court.

---

[3] As discussed in Section I.A, *Harrington*, decided after *Guilmette*, indicated that summary orders from state courts *will* typically satisfy AEDPA's merits-adjudication requirement. While at first blush one might think that *Harrington* would abrogate the "look through" required by *Guilmette* in favor of treating all M.C.R. 6.508(D) orders as merits-based, M.C.R. 6.508(D) orders are of a different kind than those addressed in *Harrington*. *Harrington* labeled as merits-based only a summary state court ruling that either expressly claimed to be on the merits, though it need not have provided any reasoning, or one that was silent on the topic, in which case it enjoyed a presumption of being on the merits. *Harrington*, 131 S. Ct. at 784–85.

*Harrington* did not address state court orders like those made under M.C.R. 6.508(D) that, from the ambiguous language of the rule itself, allowed for the possibility of a procedural ruling in some circumstances and a merits-based decision in others. These so-called "ambiguous" orders have always required "look through." *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *see also Vasquez v. Jones*, 486 F.3d 135, 141 (6th Cir. 2007). *Guilmette* merely clarified that M.C.R. 6.508(D) orders were ambiguous. *Guilmette*, 624 F.3d at 289.

In any event, because we ultimately construe the decision of the Macomb County Circuit Court to be on the merits, look-through has the same effect in this case as the *Harrington* alternative of automatically treating the Michigan Supreme Court's summary order as a decision on the merits—both trigger AEDPA deference. We thus assume, without deciding, that *Guilmette*'s look-through process, though established a few months before *Harrington*, is still viable in its wake.

**C**

The decision of the Macomb County Circuit Court dealt individually with the seven discrete grounds for relief that Moritz raised before that court. First and foremost, it dealt with Moritz's two claims that his Sixth Amendment right to counsel of choice and his Sixth Amendment right to counsel generally were both violated. The federal district court found, without explanation, that "the Macomb County Circuit Court [never] addressed the merits of these two claims." The district court did not cite any specific language from the Macomb County Circuit Court's opinion, but merely made the conclusory statement that "the Macomb County Circuit Court declined to address the merits of petitioner's [choice-of-counsel and denial-of-counsel] claims."

Before proceeding further, we note that Moritz conceded, both in his brief and at oral argument, that during his original trial "the trial court violated his right to counsel of choice—not his right to counsel—when it appointed stand-in counsel." Appellee Br. at 11. Moritz correctly noted that "[t]he district court was somewhat imprecise when describing the basis for relief, interchangeably referring to the right to counsel and the right to counsel of choice," and concluded that it "ultimately . . . granted habeas relief on the grounds that he was deprived his counsel of choice during a critical stage of the criminal proceedings." *Ibid*. (internal quotation marks omitted). Thus, Moritz now argues that "the facts give rise to a single constitutional claim that he was denied his right to counsel of choice," and he does not press his denial-of-counsel claim. *Ibid*. Accordingly, Moritz has waived his denial-of-counsel claim, and we need not address whether the state court decided that claim on the merits and, if so, whether its decision was contrary to, or an unreasonable application of, clearly established federal law, as determine by the United States Supreme Court.

Moving to the language of the Macomb County Circuit Court's decision, our review indicates that its ruling on Moritz's choice-of-counsel claim was on the merits. That court used the following language in denying Moritz's choice-of-counsel claim:

> Defendant first asserts that the trial court violated his Sixth Amendment right to counsel of choice when it replaced defense counsel without obtaining defendant's consent or waiver. The Court notes that other than to recite myriad case law, defendant has failed to provide any details regarding this claim. The Court will not investigate this claim for defendant. Defendant may not merely announce his position and leave it to the court to determine and rationalize the basis for the claim. Additionally, this is an issue that certainly could have been raised in any of the prior appeals defendant has made. *This argument is without merit*.

(internal citations omitted) (emphasis added). The court's express statement that "[t]his argument is without merit" is enough to satisfy AEDPA's merits-adjudication requirement. As *Harrington* made clear, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning," *Harrington*, 131 S. Ct. at 784, thus the state court's holding that Moritz's argument had no merit was enough to trigger the deferential standard of review required by AEDPA § 2254(d).

We acknowledge that the state court's additional language discussing Moritz's failure to raise a choice-of-counsel claim in earlier appeals is a reference to procedural default. But this circuit's precedents leave no doubt that as long as the state court put forward a merits-based ground for denying post-conviction relief, its mentioning of procedural default as an alternative or even primary ground for denying relief does not preclude AEDPA deference. *Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010); *see also Brooks v. Bagley*, 513 F.3d 618, 624–25 (6th Cir. 2008) (confirming

this rule and noting that "[a]ll of the circuit courts that have considered th[is] question" have held the same).

Moritz argues that the phrase "this argument is without merit," when taken in context, refers solely to his "failure to present the claim on direct appeal" and that "[m]erely saying the word 'merit' did not transform an obvious procedural dismissal into a merits adjudication." Appellee Br. at 17 n.8. *Harrington* indicates otherwise. Simply saying "merit" is enough—in fact, *Harrington* indicates that even failing to say merit is usually enough given that silent state-court decisions are presumed to be on the merits. *See Harrington*, 131 S. Ct. at 784–85.

Furthermore, context does not "make[] clear that the court's statement referred [only] to Mr. Moritz's failure to present the claim on direct appeal." Appellee Br. at 17 n.8. In fact, read in context, the language "[t]his argument is without merit" is the concluding sentence of a paragraph that begins with the following introductory sentence: "Defendant first asserts that the trial court violated his Sixth Amendment right to counsel of choice when it replaced defense counsel without obtaining defendant's consent or waiver." Basic knowledge of analytical style would suggest that the paragraph's closing sentence should be read as resolving its opening sentence, indicating in this instance that the argument laid out in the introductory sentence—that Moritz was denied his right to choice of counsel—is, as the concluding sentence states, meritless. The state court's use of the word "argument" in the closing sentence, rather than a term like "claim" or "petition," also suggests that it was ruling on the merits of the argument presented in the paragraph's opening sentence.[4]

---

[4] And the state court, before expressly stating that Moritz's argument was without merit, discussed not only the issue of procedural default, but also Moritz's failure to sufficiently flesh out

- 14 -

In sum, the Macomb County Circuit Court clearly met both the Supreme Court's and our own circuit's requirements for issuing a ruling on the merits of Moritz's choice-of-counsel claim. Thus, the panel must afford this claim the deference mandated by § 2254(d).

**D**

Before moving on, Moritz makes one final argument as to why we should not employ the deferential AEDPA standard of review. Specifically, Moritz claims that the State of Michigan waived its argument that the state-court decision was on the merits by failing to press this argument below. Appellee Br. at 12–13. He asserts that the State argued only that his claim was procedurally defaulted and that he had not shown cause and prejudice for such default. *Ibid*. Thus, according to Moritz, the State cannot argue for the first time on appeal that the Macomb County Circuit Court issued a merits decision. *Ibid*.

This argument fails for two reasons. First, this circuit has expressly held, in the context of determining whether the AEDPA § 2254(d) standard of review applied, that "a party cannot 'waive' the proper standard of review by failing to argue it." *See Brown v. Smith*, 551 F.3d 424, 428 n.2 (6th Cir. 2008).[5] Other sister circuits have agreed. *See, e.g.*, *Gardner v. Galetka*, 568 F.3d 862, 879 (10th Cir. 2009) (holding that "the standard of review under AEDPA cannot be waived by the parties");

his claim—a defect that one could plausibly interpret as going to the merits.

---

[5] Though other aspects of *Brown* may have been overruled by the Supreme Court's recent decision in *Cullen v. Pinholster*, *see Williams v. Lafler*, No. 09-2137, 2012 WL 3326301, at *3 (6th Cir. Aug. 14, 2012), nothing suggests that *Brown*'s ruling on waiver of the AEDPA standard of review is any less persuasive.

*Eze v. Senkowski*, 321 F.3d 110, 121 (2d Cir. 2003) (noting that AEDPA § 2254(d) "contains unequivocally mandatory language" and thus that "if the [state court] adjudicated [a] claim on the merits, we must apply AEDPA deference"); *see also Worth v. Tyer*, 276 F.3d 249, 262 n.4 (7th Cir. 2001) (holding, in the context of Title VII litigation, that "the court, not the parties, must determine the standard of review, and therefore, it cannot be waived").

Even if there were not clear circuit case law refuting Moritz's waiver claim, the State has presented a plausible reason as to why it did not present a "decision on the merits" argument below. At the time Moritz's case was litigated in federal district court, this circuit had not handed down *Guilmette*. Thus, according to Sixth Circuit case law of that time, the Michigan Supreme Court's order denying review of Moritz's appeal under M.C.R. 6.508(D) was the last controlling order. Given the circuit's conflicting case law prior to *Guilmette*, most of which suggested that a ruling based on M.C.R. 6.508(D) was procedural, the State may have felt that it could not make a plausible argument that the relevant state-court decision—at that time that of the Michigan Supreme Court—was on the merits.

Thus, Moritz's waiver argument is not supported by law or the facts of this case and presents no obstacle to the panel's application of AEDPA deference to the state-court decision.

**III**

Having determined that Moritz's choice-of-counsel claim is subject to the deferential AEDPA standard, we next determine whether the Macomb County Circuit Court's ruling—that substitution of Moritz's counsel during the reading of a supplemental jury instruction did not deprive him of his Sixth Amendment right to counsel of choice—was "contrary to, or involved an

- 16 -

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Our ruling in *Carroll v. Renico*, 475 F.3d 708, 713 (6th Cir. 2007), easily disposes of this question. In *Carroll*, we addressed a situation where counsel for a co-defendant stepped in to represent defendant Carroll during reinstruction of the jury. *Id*. at 709. Carroll's own attorney was absent during the jury reinstruction, and it did not appear from the record that Carroll consented to substitution of his co-defendant's lawyer. *Ibid*. Even though this circuit's case law from *Olden v. United States*, 224 F.3d 561, 569 (6th Cir. 2000), would, on *de novo* review, have required Carroll to "knowingly and intelligently accept[] substitute counsel," the *Carroll* court noted that "[t]he Supreme Court . . . has not required this court's solution in *Olden*." *Carroll*, 475 F.3d at 713.

Reviewing numerous Supreme Court cases dealing with absence of counsel, the *Carroll* court summarized the dearth of Supreme Court precedent on substitute counsel as follows:

> The Supreme Court [has] not address[ed] whether "stand in" counsel solves the problem of an absent counsel. Because no United States Supreme Court precedent deals with the issue of "stand in" counsel, the Michigan Courts did not engage in an unreasonable application of Supreme Court precedent when they determined that Carroll was not denied assistance of counsel at the jury reinstruction phase.

*Id*. at 713–14. Since that opinion, no further Supreme Court case law has emerged to lead us to diverge from this finding.

In fact, Moritz acknowledged in his brief that *Carroll* is "a case governed by Section 2254(d)" and that in that scenario, this circuit expressly held that its "decision in *Olden* has not been adopted by the United States Supreme Court, and thus that the state court's failure to follow *Olden* was not an unreasonable application of Supreme Court law as required by AEDPA." Appellee Br.

at 42. Moritz's brief argued only that this case does not involve § 2254(d) deference and thus that "*Olden* controls here, rather than *Carroll*," *ibid*., a claim we rejected in Part II.C.

In a footnote in his brief and at oral argument, however, Moritz made the alternative argument that if we were to apply the deferential AEDPA standard to the state-court decision in this case, the state-court decision was still an unreasonable application of the Supreme Court's holding in *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006). Though *Carroll* was decided after *Gonzalez-Lopez*, Moritz pointed out that the state-court decision under review in *Carroll* was decided before *Gonzalez-Lopez*. Thus, because "[t]he [federal] law in question must have been clearly established at the time the state-court decision became final, not after," *Peak*, 673 F.3d at 472 (citing *Williams*, 529 U.S. at 380), Moritz argued that *Carroll* did not take account of *Gonzalez-Lopez*.

While Moritz is correct about the timing of the decisions at issue, we nevertheless find Moritz's reliance on *Gonzalez-Lopez* to be unavailing. That case held that a defendant's Sixth Amendment right to counsel of choice was violated when his chosen counsel was erroneously disqualified *for the entire trial*. *Gonzalez-Lopez*, 548 U.S. at 144. Here, however, Moritz's claim is based on a temporary—and rather brief—substitution for his lawyer of choice rather than complete deprivation of his chosen counsel. The inconvenience of having substitute counsel stand in for a brief moment is in no way comparable to the complete denial of one's chosen counsel for the entirety of litigation.

In addition, *Gonzalez-Lopez* turned on the fact, conceded by the government, that the trial court *erroneously disqualified* the defendant's preferred lawyer. *Id*. at 143–44. In the instant case,

however, Moritz's counsel, Nelson, was not unavailable due to exclusion by the trial court, but due to a conflict caused by Nelson's own personal schedule. Notably, *Gonzalez-Lopez* reaffirmed "a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness and *against the demands of its calendar*," and made clear that it was "not a case about a court's power . . . to make *scheduling* and other decisions that effectively exclude a defendant's first choice of counsel." *Id*. at 152 (emphasis). The substitution of Moritz's counsel occurred because Nelson was not present at the time the trial court needed to issue a supplemental jury instruction, not because the trial court wrongfully excluded him. Nothing in *Gonzalez-Lopez* constitutes clearly established federal law requiring the court to delay jury deliberations and reschedule the reading of a supplemental instruction in order to accommodate the schedule of defendant's chosen counsel.

Thus, in accord with this circuit's earlier precedent and our reading of *Gonzalez-Lopez*, we hold that the Macomb County Circuit Court's decision as to Moritz's choice-of-counsel claim was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.

## IV

For the foregoing reasons, we REVERSE the decision of the district court. Because the district court, having granted Moritz's choice-of-counsel claim, considered it unnecessary to review his other claims and declined to do so, we REMAND Moritz's petition to the district court with instructions to issue a ruling on Moritz's remaining grounds for relief.