**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 17a0284n.06**

**No. 16-1504**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| CONNY MORITZ, | ) | **FILED** |
| | ) | May 22, 2017 |
| Petitioner-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JEFFREY WOODS, Warden, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Respondent-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: BOGGS and MCKEAGUE, Circuit Judges; and CARR, District Judge.[*]

BOGGS, Circuit Judge. This case comes to us presenting a common challenge: a district court is said to have granted habeas relief despite the deference to state courts demanded by AEDPA.[1] In 2003, Conny Moritz was tried for and convicted in the Macomb County Circuit Court of various crimes relating to the kidnapping of his estranged wife and her son. At various times on direct appeal, Moritz argued, *inter alia*, that his conviction should be overturned because (1) the trial court violated his Sixth Amendment right to counsel when it replaced his defense counsel without obtaining his consent; (2) he was denied his Sixth and Fourteenth Amendment rights to counsel when his retained counsel was absent at a critical stage of trial; and (3) he was denied his Sixth Amendment right to confront the witnesses against him. All three

---

[*] The Honorable James G. Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

[1] "AEDPA" refers to the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214.

claims were denied on the merits in state court, and all three claims were re-raised in Moritz's

habeas corpus petition before the district court. The district court granted Moritz's petition on

the first two grounds, but we reversed, noting that the district court had failed to give the state

courts proper AEDPA deference. *See Moritz v. Lafler*, 525 F. App'x 277 (6th Cir. 2013). We

remanded the case to the district court to evaluate the remainder of Moritz's habeas claims. On

remand, the district court granted habeas *again*, this time on Moritz's third claim. The State

challenges the district court's decision on appeal. Because the district court again failed to give

proper AEDPA deference, we reverse the district court and remand for proceedings consistent

with our opinion.

I

A

The basic facts of this case can be gleaned from our previous opinion:

> Moritz's underlying conviction arose from a series of events beginning in November 2002, when Moritz's wife, Donna, left their home in Tennessee and moved to Michigan. With her, Donna also took her eight-year-old son, Salvatore, who was not related to Moritz. In December 2002, Moritz traveled to Michigan along with his own two children, Tina and Kevin, to bring Donna back to Tennessee. After arriving at the apartment where Donna was staying, Moritz allegedly threatened Donna, Salvatore, and Donna's neighbors with a gun and forced Donna and Salvatore into his car. Once in the car, a struggle ensued during which Moritz fired the gun, injuring Donna, Salvatore, and Tina. At the end of this scuffle, Moritz fell out of the car, at which point the remaining passengers drove to a nearby hospital for treatment. Though Salvatore and Donna were seriously injured, no one was fatally wounded during this incident.

> In July 2003, Moritz was tried in the Macomb County Circuit Court for crimes relating to this series of events. . . . After the jury deliberated for approximately fifteen hours, it informed the judge that it could not reach a unanimous verdict. The judge, however, felt that it was too early to declare a mistrial and spoke with the parties about reading the jury a supplemental deadlock instruction. . . .

-2-

> . . . The judge . . . then read the supplemental instruction to the jury. . . .
>
> Subsequently, the jury convicted Moritz of one count of kidnapping, in violation of Mich. Comp. Laws § 750.349, one count of first-degree home invasion, in violation of Mich. Comp. Laws § 750.110a(2), three counts of felony firearm, in violation of Mich. Comp. Laws § 750.227b, four counts of assault with a dangerous weapon, in violation of Mich. Comp. Laws § 750.82, and one count of carrying a dangerous weapon with unlawful intent, in violation of Mich. Comp. Laws §750.226.

*Id.* at 278–79.

Of relevance to this appeal, the trial court also permitted the State to introduce at trial a preliminary-examination transcript of Carl Cooper, a friend of Moritz who was present for many of the events leading up to and during the alleged kidnapping. The trial court's rationale was straightforward:

> Apparently, the prosecution has one witness left. His name has come up plenty of times, Mr. Carl Cooper. Unfortunately, Mr. Cooper is indisposed as we know, it sounds like he was picked up by Southgate Police, a probation violation. Optimistically, to try and get him here today, I don't even really see it. It would have to be tomorrow. I told counsel I intend to proceed, we have the benefit of a preliminary examination transcript where Mr. Cooper was called as a witness, was subject to cross-examination. I'm finding that Mr. Cooper is unavailable as a witness, and as a result, that's why we have exam transcripts, we might as well use them.

*People v. Moritz*, No. 251265, 2006 WL 2220966, at *2 (Mich. Ct. App. Aug. 3, 2006).

B

On direct appeal, Moritz challenged the trial court's determination that the Cooper transcript was properly admissible. The Michigan Court of Appeals rejected Moritz's appeal on the merits:

> Defendant argues that the trial court erred by allowing Carl Cooper's preliminary examination testimony to be read into the record in lieu of requiring the prosecution to provide Cooper's live testimony. We disagree.

-3-

"The decision whether evidence is admissible is within the trial court's discretion and should only be reversed where there is a clear abuse of discretion." *People v. Starr*, 457 Mich. 490, 494; 577 NW2d 673 (1998).

Defendant contends that the trial court admitted his testimony in violation of his Sixth Amendment right to confront the witnesses against him. Pursuant to the United States Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36; 124 S Ct 1354, 1374; 158 L.Ed.2d 177 (2004), "testimonial statements of a witness who did not appear at trial [are inadmissible] unless he was unavailable to testify, and the defendant had ... a prior opportunity for cross-examination." *Id.* at 53-54. Cooper's preliminary examination testimony was clearly testimonial. *Id.* at 68 ("Whatever else the term covers it applies at a minimum to prior testimony at a preliminary hearing...."). However, Cooper was unavailable to testify at trial and defendant had an opportunity to cross-examine him at the preliminary examination.

MRE 804(a)(5) states that a declarant is unavailable when the declarant "is absent from the hearing and the proponent of his statement has been unable to procure his attendance ... by process or other reasonable means, and in a criminal case, due diligence is shown." Our Supreme Court has also explained:

> The test for whether a witness is "unavailable" as envisioned by MRE 804(a)(5) is that the prosecution must have made a diligent good-faith effort in its attempt to locate a witness for trial. The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it. [*People v. Bean*, 457 Mich. 677, 684; 580 NW2d 390 (1998) (citations omitted).]

Similarly, the test for whether a party exercised due diligence in attempting to procure a witness' attendance at trial is one of reasonableness, that being diligent good-faith efforts, not whether more stringent efforts would have produced it. *Barber v. Page*, 390 U.S. 719, 724-725; 88 S Ct 1318; 20 L.Ed.2d 255 (1968); *People v. James* (After Remand), 192 Mich.App 568, 571; 481 NW2d 715 (1992).

. . . .

> Before reading Cooper's preliminary examination testimony into the record, the trial court informed the jury that Cooper had been arrested for driving with a suspended license and that "to get him over here today would be a massive product" and that the court was going to instead use his preliminary examination transcript. We hold that the trial court correctly ruled that Cooper was unavailable.
>
> Further, defendant's attorney had and used the opportunity to cross-examine Cooper on the same issues at the preliminary examination. Therefore, the trial court's admission of Cooper's testimony did not violate MRE 804 or the Sixth Amendment.

*People v. Moritz*, 2006 WL 2220966, at *2–3. The state appeals court conceded in a footnote that it "would have preferred the trial court to make a more thorough record with regard to the logistical difficulties of obtaining Cooper's presence at trial," but concluded that the error would have ultimately been harmless because "the jury acquitted [Moritz] of the crimes to which Cooper was a witness." *Id.* at *2 n.1.

Moritz attempted to take his direct appeal to the Michigan Supreme Court, but it denied review. *People v. Moritz*, 725 N.W.2d 21 (Mich. 2006) (mem.). Moritz did not re-raise his Confrontation Clause claim in any of his subsequent applications for state post-conviction relief.

C

While Moritz's appeals were pending in state court, he filed a petition for a writ of habeas corpus in the federal district court. The district court held Moritz's petition in abeyance until his state-court proceedings concluded. On December 4, 2009, the district court reinstated Moritz's petition to its active docket and permitted him to file an amended petition that contained, *inter alia*, his claim that the trial court violated his rights secured by the Confrontation Clause of the Sixth Amendment. The district court conditionally granted Moritz's petition, but not on Confrontation Clause grounds. *Moritz v. Woods*, 844 F.Supp.2d 831 (E.D. Mich. 2012). We reversed, holding that the district court improperly failed to give AEDPA deference to the

state-court adjudication of Moritz's claims, and remanded the case to the district court to consider the remaining claims in Moritz's habeas petition. *Moritz*, 525 F. App'x at 287.

On remand, the district court again granted habeas relief, but this time on Moritz's Confrontation Clause claim. *Moritz v. Woods*, No. 2:07-CV-15369, 2016 WL 1106896 (E.D. Mich. Mar. 22, 2016). The district court, purportedly applying AEDPA deference, examined the state court record and held that "[t]he Michigan Court of Appeals' determination that the prosecution made a good faith effort to obtain Cooper's presence at trial was unreasonable" because "[t]he state made absolutely no effort to obtain Cooper's presence at [Moritz's] trial." *Id.* at *5. In support, the district court noted that Cooper was incarcerated only "39 miles and about 45 minutes away" from the state trial court, and Michigan law provided a habeas mechanism through which the trial court could have obtained Cooper's live testimony. *Ibid.*

In addition, the district court held that the trial court's error was not harmless. Its analysis of this issue is somewhat puzzling, however. Earlier in its opinion, the district court drew attention to the footnote contained within the Michigan Court of Appeals' decision that chastised the trial court for failing to make a more thorough record of the "logistical difficulties" involved in bringing Cooper to testify. *Id.* at *4–5. Language in that same footnote also expressly held that any failure by the trial court on this point *was* harmless because "the jury acquitted the defendant of the crimes to which Cooper was a witness." *Ibid.* When the district court conducted its "harmless error" analysis, however, it made little reference to this footnote. Instead, it largely relied on the Supreme Court's decision in *O'Neal v. McAninch*, 513 U.S. 432 (1995), concluding that where a federal court judge in a habeas proceeding is in "grave doubt" about whether a trial error had a substantial or injurious effect upon the jury's verdict, the petitioner must win. *Id.* at *6.

In support of these feelings of doubt, the district court frequently cited the trial record. It noted that Cooper's preliminary-examination transcript included testimony that *did* pertain to several of the counts that formed the basis for Moritz's conviction, contradicting the holding of the Michigan Court of Appeals. In addition, it noted that state prosecutors made reference to Cooper's testimony in closing argument, occasionally using Cooper "as an impartial, tie-breaking witness" to help the jury choose between the testimony of Moritz and his estranged wife. *Id.* at \*7. Given that the jury "deliberated for three days and was at one point deadlocked," the district court concluded that "[t]he jury might very well have reached a different conclusion regarding petitioner's guilt if Mr. Cooper testified before them in person." *Ibid.* Thus, the district court held that the Confrontation Clause error was not harmless and that habeas relief was proper. Although habeas relief was conditionally granted on Confrontation Clause grounds, the district court went on to reject the remainder of the claims in Moritz's habeas petition as meritless.

The State brings this timely appeal of the district court's grant of habeas relief.

II

As the district court properly noted, Moritz's Confrontation Clause claim is subject to review under AEDPA. This statute "sharply limits the circumstances in which a federal court may issue a writ of habeas corpus to a state prisoner whose claim was 'adjudicated on the merits in State court proceedings.'" *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017) (citations omitted). So long as the state prisoner's claim was "adjudicated on the merits" in state court, a federal court cannot grant habeas relief unless the state-court adjudication resulted in a decision that was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). It is undisputed that the Michigan Court of Appeals rejected Moritz's Confrontation Clause claim on the merits, so the only question before us is whether that decision meets either of the unreasonableness standards articulated in the statute.

In determining whether a state-court decision is "contrary to" clearly established federal law, we may look only to the holdings of the Supreme Court, not the dicta. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). A state-court decision is contrary to clearly established federal law only where the state court "'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court precedent].'" *Kelly v. Lazaroff*, 846 F.3d 819, 831 (6th Cir. 2017) (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). A state-court decision unreasonably applies federal law when it "identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case," or if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Ibid.* (citation omitted). In order to grant habeas relief on these grounds, the state court must have been "objectively unreasonable, not merely wrong; even clear error will not suffice." *Bryan v. Bobby*, 843 F.3d 1099, 1106 (6th Cir. 2016) (citations omitted). Stated succinctly, "[s]imply misapplying the law is not enough." *Kelly*, 846 F.3d at 831.

To show that a state court's determination of the facts was unreasonable, it is not enough that the "federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290 (2010). Rather, state-court findings of fact are only unreasonable

where they are "rebutted by 'clear and convincing evidence' and do not have support in the record." *Pouncy*, 846 F.3d at 158 (quoting *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007)).

In reviewing federal habeas corpus proceedings, we "examine the district court's legal conclusions *de novo* and its factual findings under a 'clearly erroneous' standard." *Caver v. Straub*, 349 F.3d 340, 345 (6th Cir. 2003) (citing *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999)). However, "[d]istrict court findings of fact based upon its review of state court records or written decisions receive plenary review." *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000) (citation omitted).

The Michigan Court of Appeals made two holdings that are subject to AEDPA deference: (1) that the introduction of Cooper's preliminary-examination transcript did not violate Moritz's Sixth Amendment rights; and (2) even if it did, it only amounted to harmless error.

A

The Confrontation Clause of the Sixth Amendment was designed to bar "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). In writing it, the framers of the Constitution wanted to ensure that "the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge . . . whether he is worthy of belief." *Barber v. Page*, 390 U.S. 719, 721 (1968) (quoting *Mattox v. United States*, 156 U.S. 237, 242–43 (1895)). An exception to the Confrontation Clause exists "where a witness is unavailable and has given testimony at

previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant." *Id.* at 722 (citation omitted).

There is no dispute that Cooper was subject to cross-examination by Moritz in his preliminary examination. Thus, the only question is whether the Michigan Court of Appeals reasonably concluded that Cooper was unavailable at trial. As a general rule, "a witness is not 'unavailable' for the purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Id.* at 724–25.

In *Barber*, the Supreme Court held that this "good-faith effort" requirement was not satisfied where the prosecution "made absolutely no effort to obtain the presence of [a key witness] at trial other than to ascertain that he was in a federal prison" some 225 miles away from the trial court. *Id.* at 723. The Court noted that prosecutors could almost certainly have guaranteed his release through a writ of habeas corpus ad testificandum issued by either a state or federal court. *See id.* at 724. From the record, the Court said that it appeared that the "sole reason" the witness was not present to testify in person was because the prosecutors "did not attempt to seek his presence." 390 U.S. at 725.[2]

As the district court noted in its opinion, there are similarities between *Barber* and Mortiz's case. Cooper was incarcerated only 39 miles away from Moritz's trial, and Michigan law provided a mechanism through which Cooper could have been produced in order to testify. *Moritz*, 2016 WL 1106896 at *5. Further, the record establishes no efforts by the prosecution to obtain Cooper's attendance after he was arrested by the Southgate police. *See id.*

---

[2] In light of *Barber*'s focus on the "prosecutorial authorities," we take the references in *Barber* to "the State" to mean only the prosecution—not other state actors like the trial judge.

There is a difference between *Barber* and Moritz's case, however. In *Barber*, as well as its progeny, prosecutors knew about a witness's potential unavailability *before* trial. *See, e.g.*, *Barber*, 390 U.S. at 720 (a key witness became unavailable in a seven-month window between a preliminary hearing and trial); *Ohio v. Roberts*, 448 U.S. 56, 58–59 (1980) (a key witness disappeared during a one-year window between a preliminary hearing and trial); *Hardy v. Cross*, 565 U.S. 65, 66–67 (2011) (a key witness disappeared 26 days before trial). Here, Cooper was arrested *during trial*. And the record indicates that his detention caught everyone off guard.[3]

This difference matters. Unlike the witness in *Barber*, Cooper was not unavailable to testify at the moment "solely" because the prosecution made no effort to get him there. Instead, Cooper was unexpectedly arrested. At this point, the circumstances become distinct enough that it is uncertain whether the rule from *Barber* that conditions a court's unavailability finding on prosecutorial efforts has any application. This is in part because any effort to obtain Cooper would have to run through the trial judge, who would either have to issue a habeas writ himself or stay the trial to await another court's approval of Cooper's transfer. *See* M.C.L. 600.4385(1). Here, the judge declared his intent to forge on with the nearly complete trial. The real issue is not prosecutorial efforts but whether case-management concerns can modify the Confrontation Clause's general command of live testimony when judging an unavailability finding.

This is a close case. Were we sitting *de novo*, we might have reached a different conclusion. Perhaps the Confrontation Clause requires the court to stay the trial or exclude the prior testimony. But *Barber* only somewhat supports—rather than dictates—thaat outcome. Thus, this case presented precisely the kind of determination that Congress, in passing AEDPA,

---

[3] It is not entirely clear precisely when the State became aware of Cooper's incarceration. However, the trial court's discussion of Cooper implies that it was unexpected: "Unfortunately, Mr. Cooper is indisposed as we know, it sounds like he was picked up by Southgate Police, a probation violation."

left to the reasoned jurists of this nation's state courts. We hold the difference between Cooper's sudden detention and the prosecutorial inaction in *Barber* sufficient to render the Michigan Court of Appeals' decision reasonable for the purposes of AEDPA.

As this issue resolves the case, there is no need to consider whether the Michigan Court of Appeals was unreasonable in concluding that, even if a Confrontation Clause violation had occurred, any error would have been harmless.

III

For the foregoing reasons, we REVERSE the decision of the district court and REMAND for the entry of an order not inconsistent with this opinion.